Charles Corey, Your Honor, to explain, I came up, left at 5 in the morning, and the Metrolink train, somebody broke the door, and it just sat there for 20 minutes. Otherwise, I would have been right on time. Not a problem. We're happy to accommodate. And I would ask, I'm not sure how to work this clock. You don't work it. It's worked for you. Thank you. That helps a lot. Thank you, thank you. Mr. Relwell. Do I have to do something? No, you just, you have to stop when it gets to zero. I can do that. That's your job. I would just like some time for rebuttal. Would you state your name, please? Charles Corey for Mr. Francisco Ramon Ramirez. The jury referred him as Frank. There's a reason for that. They asked for his, I pointed it out in my brief. I read the whole record very carefully. I have not seen this before where the jury asked for read back of Frank's testimony and Eliza's testimony. Counsel, the only question really in the case is whether the Cunningham error was or was not harmless, right? But we judge it by the jury. Right. Is that the question? That's it. Okay. Nothing more. And I was starting it, but please go ahead. Well, I guess what I'd like you to do is to address the issue of excessive cruelty, which was discussed at some length in the district court's discussion. In light of three separate shots, each of which required aiming again and a separate pull of the trigger, and the use of expanding or exploding bullets that caused extreme damage, the form of bullets that is banned in warfare, human to human. So why isn't it without doubt that the jury would have found at a minimum that aggravating factor? Well, it's without a doubt they wouldn't have found it because they already rejected that. And they found that there was extreme provocation here. That they rejected. Provocation and cruelty are two different things. You can be provoked and be angry and still be excessively cruel. Mental, they concentrated on the mental state of this man. And his mental state was that he was trying to protect his sister. And the way I would deal with this is I would compare it to the Supreme Court of California's case, people versus Sandoval, which is very similar. It was, but you have to, the facts in that case are actually much more aggravated than in our case. Because Ada Sandoval, and I'd like to talk about them. That was the, that's our case really, is people versus Sandoval. Because the Supreme Court of California had to deal with this exact same issue. And they ruled, they ruled that we can't, we don't have confidence that the jury would have found Ada Sandoval was callous, vicious. That same, that same aggravating circumstance. Let me ask you one factual question that I was not certain I was able to track down. I understood that your client had at his disposal two firearms, not just the hunting rifle that he selected. Is that correct or incorrect? He had firearms. I think one he, his sister, it was a shotgun. And he was worried about her safety. So he loaded the shotgun and put it by the door. That was probably the other. Was there another weapon in his truck or car, his vehicle? He had gone target shooting right before this. So was there another weapon? There could have been. That's what I'm trying to. You know, that did not. It's kind of a yes or no question. I don't know. It's the record show. I don't know the answer. I presume it could very well be I didn't focus on it. I do remember he'd gone target shooting right before this happened. I do know that the person that he shot had a pistol in his back pocket. Well, part of the reason for my question is if he had additional, one or more additional firearms to choose from, and he chose the most destructive one, that also might bear on the question that I'm asking. I think we have to put ourselves in the position of a jury who was told by the prosecutor to find murder, and they did not, and they were presented with all these arguments. It's a separate question. The question of premeditation or not, angry or not, is really just a different question. But the arguments of the prosecutor were callousness. That this was callous. He made those same arguments. And the judge, when he made these, when he aggravated the sentence by adding 10 years on to the midterm for voluntary manslaughter, he said I, he quoted the prosecutor's arguments. But they'd already been rejected. And one thing about the, we cannot ignore juror number three. Can't ignore that. But that's in my brief. It's in the R&R. Juror number three came in the day after and said this is awful. This is awful. And all it takes is one juror to be the one that would not accept the aggravated sentence. Is that a permissible consideration, what was in the mind of an individual juror? I think so, Your Honor. Why would it not be? People v. Sujin is a California case, I cited it, where it said that a hung jury is a favorable result. This juror was appalled at what had happened. The juror did acquit on first degree murder, right? Yes. The jury did. They found. They found him not. Not guilty. That's right. And the point is. I have one concern about putting too much weight on juror number three. And it is that the jury didn't get to deliberate on the aggravators. So juror number three didn't get any input from the other jurors. So it's not surprising that different jurors have different views at one point in time. This isn't necessarily cutting against the outcome you desire here, but I am troubled by putting too much weight on one individual juror's comment. Well, the problem, too, is that the defense attorney didn't get to argue these. Right. That's a problem. The defense attorney did not get to argue as I'm arguing now. It's all retrospective. And I feel that the court has to have graved out in view of what this man was doing in that he was trying to protect somebody. Ada Sandoval was a woman who worked in a bar in the Sandoval case. And those facts are really important to know. And just bear with me while I go through them. Her job was not a bartender. She was to dance with patrons and get them to buy drinks. And there was a big brawl with another woman that exploded outside. And she went home and gathered some men friends to come back and wreak vengeance and even told them to get her gun. And two people were killed in that brawl, that melee that followed. And the Supreme Court of California said, to all the aggravating circumstances, which are the same ones here, they weren't argued and we really don't know. We have graved out whether or not, had that callousness, had the same violence been argued in Ada's case to the jury, whether the jury would have found that. So we're not going to. California, in this case, denied review. They denied review and we can't really take anything from that. Sandoval was on the books when they denied review? They denied review. They deny review. The question was, was Sandoval on the books when they denied review? Yes, it was. Yes, it was, Your Honor. And Garcia and one after that. You have about two minutes left if you want to save some time for rebuttal. I would like to say, yeah, I do, but I want to point to, I did, I don't know if you got it in time, but I did a 28-J letter on the other case. We did receive that. We did receive that. And I think the facts in that case are much more callous than somebody trying to save your sister. That was a man who was trying to keep his wife from leaving and shot her in the face and then pointed the gun at his son. That was callous. But the Court said no. This Court said no. So I think that that's something that you really should consider is the Unruh case. Thank you. Thank you. Good morning, Your Honor. May it please the Court. I'm Kevin Vienna, California Deputy Attorney General for Respondent in this matter. First of all, with regard to your question, Your Honor, were there two weapons in the car when he left to retrieve one of those two weapons? The answer to that is yes. We cited to the Court of Appeal opinion in our brief at page 11. Does the record disclose what sort of weapon the other one was? Yes, it was a .22 rifle. So less lethal I think is the point we think is significant. Where were the wounds to the victim? Right here. All center body mass? Yes, Your Honor. So are you telling us that three .22 rifle rounds center body mass would not have killed him? No, not at all, Your Honor. What we're saying is that the selection of the weapon demonstrates both the intention to kill here, but as well demonstrates that given the choice, Mr. Ramirez showed an insensitivity and an indifference. I thought that one of the shots was to the arm and not to the center mass. I guess I should say that the trial judge had some uncertainty or saw some ambiguity with regard to the forensic evidence. One of the shots struck defensively in the hand. That was clear, but I thought that one went into his arm. The shots that struck his body struck in the center of mass, and the description of it that the trial judge used was that it blew his heart out. Here's our problem, and hopefully you can help us with it. The error here is apprendi. Yes, Your Honor. We wouldn't be here if these aggravators had been presented to the jury. Both sides had an opportunity to argue, and the jury rendered a finding as to these factors, correct? Correct, Your Honor. So we're left in some respects to guess what they would have done, and it's even murkier here because on the one hand they acquitted him of first-degree murder, which necessarily involves premeditation, yet they didn't fully accept his imperfect self-defense theory either. And in the record we have the prosecutor's arguments made to the jury about how serious these things were, how callous they were, et cetera, et cetera, and the judge's findings without jury help. But the defense had no opportunity, as your colleague points out, to argue the other side of that coin.  So they didn't argue it to the jury. They instead argued it to the trial judge who made those determinations. Isn't the heart of apprendi that when you aggravate a sentence, in this case adding 10 years to the sentence, this is something that juries ought to find as a matter of fact? Certainly, Mr. Ramirez, we know now, three years after the jury acted in his case, the United States Supreme Court issued a decision in Cunningham and said California was incorrect in its approach to the tripartite sentencing. One correction is that the difference in the sentence in this case is not 10 years but five years. That is, if he had gotten the middle term for the gun use, it would have been five years instead of 10 years. But that's certainly significant to Mr. Ramirez, and it is the difference between whether he'd be out of prison today, perhaps, or may have to wait another three or four years. I think it is also worth pointing out, perhaps, to the court, that Ramirez doesn't really say that the trial judge was wrong about his observations. That is, the facts that the trial judge expressed, that there were multiple shots, that the choice of weapon with regard to callousness or viciousness, that Mr. Martinez was, at the moment of the shooting and through the shooting, particularly vulnerable. That is, it looks like he was seated when he entered. The testimony of Ms. Trujillo is that he was nodding off, falling asleep. He was surprised by the lights being placed on. And as the trial judge said, if he wasn't particularly vulnerable at the first shot, he certainly was at the remaining shots that were fired. And finally, there was evidence from which a finder of fact could and would find planning and sophistication. Mr. Ramirez left the apartment, went to his truck, told the woman who was in the truck, you should leave, signaling, we believe, what was about to happen, and went back and engaged in what I found interesting reading the closing argument last night, was essentially he precipitated a wild west gunfight. That's the best that can be said for him. And it's very difficult to find a theory of defense that really reduces this to voluntary manslaughter, but the jury could make that choice if they wanted to. You know, juries do crazy things sometimes. And I certainly found that when I tried criminal cases on both sides. Go ahead. Well, the Sandoval. Here's what I was going to ask, and I'm sorry, it just flew out of my mind for just a second. I assume the jury in this case got the standard premeditation instruction? Yes, Your Honor, they did. Any amount of time, any reflection, even if momentary? Yes. Do I remember the words correctly? Yes, Your Honor. And they said no to that. I have difficulty with your planning, the planning piece of your argument. But am I also correct that any one of the aggravating factors, if we were convinced, which we may or may not be, that the jury would have found that and that we have no doubt, it doesn't matter whether planning is out the window. Correct. As this Court's decision in Butler makes clear, if any one factor is either found or would have been found under the Brecht standard, then the judgment can be on penalty. I think we're about to talk about Sandoval, and I'm interested in your comments. I wanted to make a brief comment with regard to your statement about this is the type of thing that Sandoval says that this is the type of thing that never again will be decided by juries in California and that won't be decided. Should this Court reverse and return this for resentencing, there won't be a jury convened. The decision will be made by a judge. The factors will be the factors that were there. One final comment, if I may, and then if there are no further questions, I'll conclude my remarks. And that is, Unruh is not the same case. Sadly, I know too much about Unruh. I argued that one. Did you want to talk about Sandoval, which is what I asked about? Well, in Sandoval, I think the critical difference is that Sandoval was not the shooter. She was not the shooter in that case. And besides the myriad of other contexts. She just rounded up the posse. She did. So she was certainly responsible, and she was criminally liable for the crime that occurred. But whether she can be, whether the jury might or would have found any factor, or particularly the cruelty type viciousness factors, is a more difficult question in Sandoval than it is in the case of Mr. Ramirez. I think you were going to talk about Unruh. In Unruh, we have to keep in mind, or it's not very clear, I think, from the Ninth Circuit's memorandum decision, that Unruh was convicted of two different crimes. He was convicted of attempted murder, I believe, of his girlfriend. He shot her in the face. And then after, and miraculously, she survived that. In fact, survived it quite well. She was a little bit surprised and then walked into the bathroom to clean herself up. But then her 11-year-old son entered the room, and Mr. Unruh grabbed the boy and placed a gun to his head. And that was the crime for which the upper term was imposed. And the question was, did that show unusual callousness? And as the panel said, and as Chief Judge Kaczynski questioned me at great length, is that callousness and viciousness? And we thought it was. He thought, in light of the fact that this was a momentary incident, that that was not clear at the Breck Standard, sufficiently clear as to find that the Apprendi-Cunningham error was harmless. Good morning. Thank you. Thank you. Mr. Curry, you have some time left. Thank you. This was a momentary incident too, a tragedy, a momentary incident. In the dark, but his whole, he wasn't trying to, like Mr. Unruh, keep his girlfriend from leaving and intimidating his stepson. He was trying to save his sister. Let me say this, that Mr. Viena really pointed out something that's sort of hidden. And the court in San Miguel is absolutely right. There will be no jury trial. We don't even know if this court, and I hope this court rules that this was an Apprendi violation. But he's not home at all. He gets sent back for re-sentence. That's what will happen. And because the law has changed in California, and it was mentioned in Sandoval, they've wiped out the presumptive middle term. The judge can set that aggravated term again, but he can't give facts. That's the law. It sounds bizarre, but that's the law. He's still in the soup. He goes back before that same judge. The judge has the full range, one, two, three, of what to do. He doesn't have to give him the middle term. And that would seem to be an ex post facto violation. It's not. That's for another day. That's another day. Actually, the Supreme Court worried about that and spent 20 pages in Sandoval talking about, is that or is that not an ex post facto violation. But we'll leave that for another day. And so I just wanted to point that out. He's not home free. I hope you do. Thank you. Thank you very much, counsel. The case just argued is submitted, and we appreciate the helpful arguments from both of you.
judges: Sedwick, Hawkins, Graber